UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA J MANOR,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>  Defendant. | Case No. 19-cv-02360-RS<br><br>**ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS** |

**I. INTRODUCTION**

This action arises from disputes related to Plaintiff Sylvia Manor's term life insurance policy on her late husband. According to Manor, she made premium payments up until 2012 when Defendant United of Omaha Life Insurance Company ("United") wrongfully cancelled her policy. In November 2015, Manor filed a claim for death benefits, which United denied. More than three years after filing the claim, Manor commenced the present action in the Superior Court of California. United removed the case to federal court and now moves to dismiss the Complaint. Rather than oppose the motion, Manor moved to remand the case to state court. For the reasons set forth below, the motion to remand is denied and the Complaint is dismissed with leave to amend.

**II. BACKGROUND**

**A. Factual Background[1]**

In 1998, United issued a term life insurance policy on Manor's husband with a $2 million

---

[1] The facts contained herein are taken from the Complaint and attachments thereto.

death benefit. Manor was the owner and beneficiary of the policy. The policy was automatically renewed each year as long she timely paid her premiums. If the policy was cancelled or terminated based on a failure to pay premiums, the policyholder could seek to reinstate the policy within five years of termination.

### 1. United's Failure to Send the Smokers Questionnaire

The original policy issued in 1998 was a "smoker's policy." In 1999, Manor's husband stopped smoking and she sought to reduce her premiums. When she called United's customer service in April 2000 to inquire about a rate reduction, she was told to fill out a "Smokers Questionnaire" which customer service promised to send her. Despite this assurance, the form never arrived. Manor called customer service multiple times over the following months to request a Smokers Questionnaire but never received the promised document. In August of that same year, Manor spoke to a United representative who stated that the company did not use a Smokers Questionnaire. Instead, this representative indicated Manor would have to cancel her policy and apply for a new one. Manor contends this statement was false. She also alleges United "deliberately[ and] maliciously inserted" computer code to "override the 'Send-Out Smokers Questionnaire' commands" entered by the customer service representatives. Compl. 93.[2]

### 2. United's Notifications to the Internal Revenue Service

The Complaint further alleges United "targeted" her policy for cancellation and engaged in "unscrupulous tactics" to achieve this result because there was no legal basis to terminate the policy. Compl. 20. Manor specifically accuses United of improperly informing the Internal Revenue Service ("IRS") of her premium payments in an effort to cause her to breach the contract. *Id.* 25, 35. She believes her policy was targeted for cancellation because of her husband's age. *Id.* 27. United informed Manor that, under its reading of Section 6050I of the Internal Revenue Code, the insurance company was obligated to report Manor's premiums because they qualified as $10,000 cash, or cash equivalent, payments. In Manor's view, this was merely a pretext.

---

[2] The Complaint paragraphs are not numbered, accordingly pincites for the Complaint refer to the page number listed on the bottom of each page.

Ultimately, she alleges this scheme was designed to, and had the effect of, "causing [her] to remain in the contractual relationship with [United]." *Id.* 37.

### 3. United's Mailing of Documents to the Wrong Address

The Complaint also alleges that, from 2006 to 2011, United repeatedly sent her mail and policy notices to the wrong address and often listed her name incorrectly. The errors began in 2006 when Manor moved addresses and changed her name from Sylvia Hunter to Sylvia Manor. For the next several years, United repeatedly used either the wrong name or the wrong address despite Manor's efforts to correct these errors. Manor believes United made these mistakes deliberately in hopes that she would miss a payment deadline, resulting in the cancellation of her policy.

### 4. Termination of the Policy and the Death of Manor's Husband

Manor contends she paid all premiums through January 2012. On January 9, 2012, however, United terminated her policy based on her alleged failure to pay her November 2011 premium. The Complaint does not allege any payments after January 2012. In October 2015, Manor's husband died. Manor filed a claim for benefits the following month, but United denied the claim.

## B. Procedural Background

In March 2019, Manor filed the present action in the Superior Court of California. The Complaint advances six claims for relief: (1) breach of contract, (2) breach of the implied covenant of good fair and fair dealing, (3) fraudulent concealment, (4) another claim for fraudulent concealment, (5) intentional misrepresentation, and (6) promissory fraud. On May 1, 2019, prior to receiving formal service of process, United filed a notice of removal. United now moves to dismiss the action. Rather than oppose the motion, Manor filed a motion to remand. Both matters were submitted without oral argument pursuant to Civil Local Rule 7-1(b).

## III. DISCUSSION

## A. Motion to Remand

"[A]ny civil action brought in a State court of which the district courts of the United States

have original jurisdiction" may be removed to federal district court. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over, *inter alia*, civil cases between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. *Id.* § 1332(a). The sole dispute with respect to the motion to remand relates to the *timing* of United's notice of removal. Manor argues remand is appropriate because United filed its notice of removal *before* it received service. In her view, this runs afoul of 28 U.S.C. § 1446(b) which states:

> The notice of removal of a civil action or proceeding shall be filed ***within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading*** setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

*Id.* § 1446(b) (emphasis added). In support of this position, Manor cites *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* where the Supreme Court held a defendant's time to remove begins to run upon "receipt of the complaint, through service or otherwise," but is not triggered "by mere receipt of the complaint unattended by any formal service." 526 U.S. 344, 347-48 (1999) (internal quotation marks omitted).

Manor's argument is unavailing. Section 1446 does not require a defendant to wait until formal service is complete to remove an action to federal court. *Novak v. Bank of New York Mellon Tr. Co.*, 783 F.3d 910, 913-14 (1st Cir. 2015) (holding "formal service is not generally required before a defendant may file a notice of removal" and collecting cases with similar holdings); *see also La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 97 (2d Cir. 2014); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 16-cv-0219-CRB, 2019 WL 1551672, at *3 n.2 (N.D. Cal. Apr. 10, 2019). The Supreme Court's holding in *Murphy* is not to the contrary. That case addresses when the time to seek removal *expires*; it says nothing about defendants having to wait until service is complete to file a notice of removal. Accordingly, the motion to remand is denied.[3]

---

[3] It is undisputed that the requirements of diversity jurisdiction are met. Manor is a citizen of California, whereas United is a citizen of Nebraska because it is incorporated under the laws of

CASE NO. 19-cv-02360-RS
4

**B. Motion to Dismiss**

United argues all six of Manor's claims should be dismissed because they are barred by the statute of limitations and because the Complaint does not include sufficient facts plausibly to support any of these claims. For the reasons discussed below, United's motion to dismiss is granted. Manor is, however, granted leave to amend.

1. Legal Standard for Motion to Dismiss

Under the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Dismissal under this rule may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Courts, however, need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

2. Claims 1 and 2: Breach of Contract and Breach of Implied Covenant of Good Faith

Manor's claims for breach of contract and breach of the implied covenant of good faith appear to rely on two distinct theories of breach. First, Manor argues United's refusal to pay her death benefit claim in 2015 qualifies as breach. Manor admits, however, that her policy was

---

Nebraska and has its principal place of business in Omaha, Nebraska. 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."). Furthermore, the Complaint alleges more than $2 million in damages.

cancelled in 2012 and that she received notice of this cancellation. Moreover, there is no indication Manor reinstated her policy or continued to pay premiums despite United's decision to cancel her policy. In sum, Manor fails plausibly to allege she was entitled to any benefits in 2015 because the relevant term life insurance policy was terminated years earlier.

Second, Manor alleges United breached the policy agreement in January 2012 when it cancelled her policy even though she had paid all her premiums. Even if true, this theory for relief appears to be barred by the statute of limitations. The statute of limitations for breach of a written contract is four years. Cal. Code Civ. Proc. § 337(a). Manor admits her policy was cancelled in 2012 and that she received a letter informing her of the cancellation. Accordingly, because Manor waited until 2019 to file the present action, her claims for breach of contract and for breach of the covenant based on the 2012 cancellation are almost certainly barred by the statute of limitations. Accordingly, both claims are dismissed.[4]

When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless any attempt to amend would be futile. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002). Although it appears unlikely Manor will be able to cure the deficiencies identified above, it is possible she can plead additional facts tending to show she did in fact have a policy in place at the time of her husband's death in 2015. Accordingly, leave to amend is granted with respect to the breach of contract and breach of implied covenant claims.

### 3. Claims 3 and 4: Fraudulent Concealment

Manor's two fraudulent concealment claims also appear to be barred by the statute of limitations. Under California law, fraud claims are subject to a three-year limitations period. Cal. Code Civ. Proc. § 338(d). Manor's first fraud claim is based upon United reporting her premium payments to the IRS between 2005 and 2008. The Complaint and attached exhibits show Manor was notified of these IRS filings during that same time period. Therefore, the statute of limitations

---

[4] A cause of action may be dismissed under Rule 12(b)(6) for failure to state a claim where "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

began to run no later than 2008 and expired sometime in 2011. Manor's second fraud claim arises from United's repeated use of an incorrect name and mailing address when attempting to communicate with her. According to the Complaint, this conduct ended in 2011. United subsequently cancelled Manor's policy in January 2012. Accordingly, the limitations period for Manor's second fraud claim appears to have expired in 2014 or, at the very latest, in 2015. These two claims are therefore dismissed.

Given Manor's status as *pro se* litigant and her failure respond to the present motion, however, she will be given an opportunity to amend her fraudulent concealment claims to address these apparent defects. Although it is somewhat unlikely, Manor may be able to plead facts showing that she did not discover the alleged frauds until later, thereby preserving her claims under the delayed discovery rule. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98 (1999).

### 4. Claims 5: Intentional Misrepresentation

Manor's claim for intentional misrepresentation also appears to be barred by the three-year statute of libations applicable to fraud claims. *See* Cal. Code. Civ. Proc. § 338(d). To state a claim for intentional misrepresentation, a plaintiff must allege (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Manor's intentional misrepresentation claim arises from a United representative's allegedly false statement that the company did not use a Smokers Questionnaire. According to the Complaint, this misstatement was made in the year 2000. Furthermore, based on the facts pleaded in the Complaint, it would appear Manor should have realized United was lying to her, at the very latest, in 2015 when her benefits claim was denied. The present action was not commenced until more than three years later. Manor's Complaint is, accordingly, dismissed. Given her *pro se* status, however, Manor is granted leave to amend to clarify *when* she realized she had a claim against United for intentional misrepresentation and what gave rise to this belief. In so doing, there is a small chance she will be able to establish delayed accrual of her claim.

### 5. Claims 6: Promissory Fraud

Like each of the previous claims, Manor's claim for promissory fraud appears to be barred by the applicable statute of limitations. This claim is subject to the same three-year statute of limitations discussed above. Cal. Cod. Civ. Proc. § 338(d). According to Manor, United never intended to perform under the terms of the life insurance policy. Therefore, this claim appears to have accrued in 2012 when United cancelled Manor's policy or, at the very latest, in 2015 when her benefits claim was denied. Accordingly, the claim is dismissed. Leave to amend is granted for the same reasons discussed in the previous sections.

## V. CONCLUSION

For the reasons set forth above, the motion to remand is denied and the motion to dismiss is granted with leave to amend. Should Manor choose to file an amended complaint, she must do so no later than August 30, 2019.

**IT IS SO ORDERED**.

Dated: July 29, 2019

_____
RICHARD SEEBORG
United States District Judge